# DISTRICT COURT OF THE UNITED STATES,

# DISTRICT OF VERMONT,

## OCTOBER TERM, 1848.

---

Amasa C. Moore, Assignee of Samuel W. Jones, *v.* Samuel W. Jones and Others.

*Bankruptcy. Right of assignee to collect judgment recovered by bankrupt. What claims pass to assignee. Remedial statute. Action to recover usury paid. Such claim vests in assignee. Jurisdiction of district court. Allowance of expenses of attorney of bankrupt.*

Whenever a judgment is recovered for a debt, or claim, due to a bankrupt and belonging to his assignee, whether by the bankrupt himself or by a third person in his right, the assignee is entitled to the money recovered by such judgment; and if the judgment recovered have not been paid, a court of equity may arrest the payment of it to the bankrupt, or the one who sues in his right, and order the money paid to the assignee.

There is a distinction between an action given by statute to the party aggrieved, and an action given to any one who will sue,—the former being remedial, and the latter penal.

Under the statute of Vermont, which gives to one paying usurious interest the right to recover back, by action of assumpsit, the amount so paid, the excess of interest paid becomes money in the hands of the creditor belonging to the debtor, and recoverable as money had and received to his use; and an absolute and perfect interest therein vests in the debtor, existing anterior to the bringing of an action, and not a mere inchoate right, dependent on his suing, or on any other personal act, to be by him performed.

And the right to recover back money so paid is a right vested in property, or, in the words and sense of the bankrupt act of 1841, a "right of property," which passes to and vests in the assignee under the bankruptcy.

And if the bankrupt, after the decree of bankruptcy, have brought such action in his own name in the state court, and obtained a judgment, without his bankruptcy being pleaded by the defendant in bar of the recovery, the district court of the United States have power, upon petition brought by the assignee, while the judgment remains unpaid, to so far interfere with the judgment, as to order the amount paid to the assignee.

And it is no objection to this power being exercised by the district court within one district, that the decree of bankruptcy and the proceedings under it were had in the district court within another district.

But if the assignee asks the interposition of the equity powers of the court, to give him the benefit of the judgment recovered by the bankrupt, he must take it, if he would have it, subject, not only to such charges in the suit at law as were legally taxable and recoverable as costs, but also to all other reasonable charges and expenses incurred in obtaining the judgment.

But charges for services rendered by the attorney of the bankrupt, in the suit at law, in opposing a motion there preferred by the assignee to be allowed to enter and prosecute the claim, do not come within this principle, and cannot be allowed as a charge against the fund.

And if the attorney is made a defendant in the proceedings in this court, as it is proper he should be, and the fund, by interlocutory decree of the court, is allowed to be paid to him, subject to the future order of the court, and the ultimate decree of the court be, that he pay the money to the assignee, he will be allowed to retain, in addition to the amount allowed for the charges and expenses incurred in prosecuting the suit at law, all his necessary actual charges and expenses in this proceeding, but not fees for his services as counsel in defending it; but, if he have himself acted as his own counsel in this proceeding, he will be allowed costs, as between party and party.

THIS was a petition addressed to the equity jurisdiction of the court under the bankrupt act, and set forth the following facts. Jones, one of the respondents, was declared a bankrupt, on his own application, by the District Court of the United States in the northern district of New York, and Moore, the petitioner here, was appointed his assignee. After Jones had obtained his certificate of discharge, an action for money had and received was commenced in his name, by his direction, or consent, in the state court in Vermont, against the respondent Austin, on a claim or cause of action which had accrued to Jones prior to his bankruptcy, but which he had omitted to insert in his schedule of property accompanying his

application to be declared a bankrupt, and of which the assignees had no knowledge. Austin, the defendant in the action, did not plead the bankruptcy of Jones in bar of a recovery, and a judgment was recovered against him in the county court, which was ultimately affirmed in the supreme court. The petition, after stating the above facts, claimed the money recovered in the judgment as assets belonging to Moore, as assignee of Jones, and prayed, that it might be decreed to be paid to him for the benefit of the creditors under the bankruptcy. It was alleged on the part of the respondents, that the claim, on which the judgment was recovered, was for illegal interest received by Austin of Jones in violation of the statute of Vermont on the subject of interest, and therefore was a claim of such a nature, that it did not go to the assignee of Jones on his bankruptcy. A sale and transfer of the claim by Jones before his bankruptcy were also alleged. With these additional statements, the facts set forth in the petition were admitted. A temporary injunction was granted on filing the petition, prohibiting the payment of the money to Jones, but allowing the judgment debtor to pay it into the hands of Mr. Linsley, the attorney of Jones, and also one of the respondents, to be held by him subject to the future order of the court.

*S. H. Hodges* for petitioner.

*C. Linsley* for respondent.

PRENTISS, J. There can be no doubt, that whenever a judgment is recovered for a debt or claim due to a bankrupt and belonging to his assignee, whether by the bankrupt himself, or by a third person in his right, the assignee is entitled to the money recovered by such judgment. It has been often determined, that where an uncertificated bankrupt sues and obtains judgment, as he may do unless his assignees interfere, for a debt accrued to him subsequent to the bankruptcy, and is paid the amount of the judgment, or where a creditor, after an act of bankruptcy, attaches a debt due the bankrupt, obtains judgment therefor against the debtor, and thereupon receives the amount of the debt attached, the assignees may recover of the bankrupt in the one case, and of the creditor in the other, the money so respectively recovered by them. Surely, in either case, where the judgment

recovered has not been paid, a court of equity may arrest the payment of it to the bankrupt, or the creditor, and order the money paid over to the assignees. The principal question in the present case therefore is, whether the claim, on which the judgment was recovered against Austin in the state court, being a claim for money paid by Jones for usurious interest, passed to and vested in the assignee of the latter under his bankruptcy. If it did, it is quite clear, that the petitioner, as such assignee, is, in equity, entitled to the money contained in the judgment, and that it ought to be paid over to him.

In the case of *Brandon* v. *Pate*, 2 H. Bl. 308, it was held, that the assignees of a bankrupt might recover money lost by the bankrupt at play, in an action of debt against the winner, on the statute 9 Anne, c. 14, although by the statute the action was limited to the loser himself within three months, and after that to a common informer. The only question made in the case was, whether under the statute there was any debt or vested interest existing in the loser of the money until he brought his action. The argument on the part of the defendant was, that the action being given to the loser for a limited time only, and then to a common informer, no debt vested in the loser, any more than in the common informer, until action brought. But ROOKE, J., said, there was a clear distinction between remedial and penal acts,—that in the former a debt is due to the party grieved before the commencement of the action, but not in the latter ; and upon that distinction, as well as upon other considerations of weight, judgment was given for the plaintiffs. In *Brandon* v. *Sands*, 2 Ves. Jr., 514, a case involving the same general question, it was again urged, that no debt existed in the loser of money at play, until he brought his action, and consequently that the right of action given by the statute was strictly personal in him. But the Lord Chancellor said, he had no doubt upon the case ; that nothing was so clear, as that where a statute gives an action to the party grieved, there is an interest vested in him ; that the limiting the time is to let in the penal action by the common informer ; but that while the action rests in the party injured, it is a vested interest in him, which on his bankruptcy passes to his assignees. In *Carter* v. *Abbott*, 1 Barn. & Cres. 444, a more modern case of an action on the statute for money lost by the bankrupt at play, although a recovery was strenuously contested on other grounds, the right of the assignees to

sue was not even questioned. The principal thus asserted was recognized and acted upon by the supreme court of this state as long ago as when I had the honor of being a member of it. In delivering the opinion of the court in *Hubbell* v. *Gale*, 3 Vt. 266, I put the decision expressly upon the distinction, now found to be so fully sustained by adjudged cases directly in point, between an action given by statute to the party aggrieved, and an action given to any one who will sue,—considering and treating the former as remedial, and the latter as penal.

If the right of the assignees to sue and recover was sustainable in the cases which have been adverted to, there would seem to be little or no question as to the right of the assignees in the present case. The statute regulating the rate of interest in this state, (Rev. St. *366,*) contains two distinct provisions on the subject. In one, it is enacted, that no person shall take for the forbearance of money, a greater rate of interest than six *per cent. per annum.* In the other, it is declared, that whenever a greater rate of interest has been paid, the person paying the same may recover back the amount so paid above the legal interest, with interest thereon from the time of payment, in an action of assumpsit, declaring for money had and received, or for goods sold and delivered, as the case may be. The right of action is not given, first for a certain time to the party paying the usurious interest, and then to any one who will sue, but is given wholly and only to the party paying,—thus distinguishing the case in that particular from the cases which have been cited.

The excess of interest paid, being taken in violation of the prohibitory clause of the statute, is recoverable back, with interest thereon from the time of payment, in an action of *indebitatus assumpsit* in common form, subject to the same limitation, and no other, as actions of assumpsit in general. Whether money so paid be treated as a debt due, as so much money owing the party paying it, or simply as money exacted and held from him without right and against law, can make no difference in the result of this case. According to the provisions of the statute, which in substance, as far as concerns the remedy, is merely in affirmance of the common law, the excess of interest paid was money in the hands of Austin belonging to Jones, and recoverable as money had and received to his use. An absolute and perfect interest was vested in him, exist-

Moore v. Jones et al.

ing anterior to the bringing of an action,—not a mere inchoate right, dependent on his suing, or on any other personal act by him performed.

By the bankrupt act, " all property, and rights of property of every name and nature," whether in possession or in action, are made the subject of assignment, and pass to and vest in the assignee.    While the act does not extend to rights of a mere personal nature, as claims for damages arising out of a breach of promise to marry, or out of personal torts and injuries, it comprehends every right and interest, and every right of action, founded in or growing out of property. Money exacted by way of interest beyond the rate prescribed, is property unlawfully and wrongfully taken from the party paying it, and the right to recover it back is a right founded in property, or, in the words and sense of the bankrupt law, a " right of property." It is no more a right personal to the party himself, especially when given to and vested in him absolutely, than the right to recover back money obtained by fraud, or money wrongfully and illegally extorted in any other way.

Whether Jones could or could not, after his bankruptcy, under any circumstances, have a right to maintain an action in his own name to recover the money in the hands of Austin, or, in other words, whether his bankruptcy might or might not have been pleaded in bar of a recovery by him, is a point not essential to be determined. In either case, whether the bankruptcy might or might not have been so pleaded, or whether the judgment recovered by Jones would or would not be a protection to Austin against a suit by the assignee, the latter would have a remedy against Jones, if he had received the money, and, as he had not received it, is entitled to have, what is virtually the same thing, the benefit of the judgment recovered by him.    It may be observed, however, that the right of the assignee was undoubtedly absolute and exclusive, so that Jones had no right of action whatever to recover the money.    In England, it is true, as has been already intimated, an uncertificated bankrupt may maintain an action in his own name for property acquired by him, or upon causes of action that have accrued to him, subsequent to the bankruptcy.    His right, in such case, is good against all the world but his assignees; and unless they interpose, and require a delivery of the property or payment of the money to them, the bankruptcy can-

not be set up in bar of the action. But this doctrine prevails, under the English system, only in the particular class of cases mentioned, —a class unknown here,—and is applicable to no other class. Here, as we have already seen, a bankrupt, by the decree of bankruptcy, is divested of all his property and rights of property of every name and nature, and the same, whether in possession or in action, are, by force of the decree, *ipso facto*, by operation of law, vested absolutely in his assignee. A recovery of the money in the hands of Austin, by Jones, might therefore have been prevented by pleading his bankruptcy in bar of the action brought by him; and it was by reason of such a plea not being interposed, that he obtained judgment for that which belonged to the assignee, and to which he himself had no right.

.If there had been, as was alleged and has been attemped to be shown, a *bona fide* transfer of the claim against Austin, by Jones, before his bankruptcy, it would not have passed to his assignee. In such case, the assignee would have had no right to the claim, unless, indeed, the transfer were made in contemplation of bankruptcy, but the person entitled to the claim under the transfer might properly sue and recover upon it for his own use and benefit, in the name of Jones. The evidence to make out a transfer is very weak, —too weak, at any rate, to prevail against the fact, which is fully established, that the person, to whom the transfer is alleged to have been made, was used as a witness on the part of Jones in the suit in which the judgment was recovered, and swore, that he had no interest whatever in the event of the suit. The existence of the supposed transfer is utterly irreconcilable with this solemn denial of all right and interest in the subject matter of the suit, and cannot be admitted without imputing to the person said to have received it wilful and corrupt false swearing, and the commission of a most aggravated fraud upon the administration of justice. The court, acting on the declaration made by him under oath, admitted him as a witness; and on his testimony and that of others, the judgment was recovered. Under such circumstances, it might be worthy of consideration, in a case calling for a decision of the question, and not dependent on the right as it existed in fact at the time of the bankruptcy, whether he would not be conclusively bound by the declaration he then made, and estopped to assert any right in himself in opposition to it.

XXIII. 94

On the merits of the case, it appears to be evident, that the assignee is entitled to relief, and as to the power and right of this court, in ordinary cases under the bankrupt act, to interfere, as far as is here required, with a judgment and execution of the state court, the case of *Christy, Assignee of Walden,* v. *City Bank of New Orleans,* 3 Howard 292, is an authority quite decisive. The doctrine laid down in that case fully sustains the exercise of the power.

The principal difficulty attending the question of jurisdiction arises out of the particular circumstances of the case. Jones was decreed a bankrupt, not in this court, but in the district court of the northern district of New York; and the question is, whether, that being the case, this court can take jurisdiction of the matter in controversy, or, indeed, of any matter arising under or growing out of the bankruptcy, the court having no equity jurisdiction whatever, except what is given it by the bankrupt act. In *ex parte Martin et al.,* 5 Law Reporter 158, it was held, that the equity jurisdiction of the district courts of the United States, under the bankrupt act, was not confined to cases of bankruptcy originally arising and pending in the particular court where the relief is sought. It was considered, that as cases of bankruptcy, originally instituted and pending in one district, might apply to reach persons and property situate in other districts, and require auxiliary proceedings in such districts to perfect and accomplish the objects of the act, the intention of congress was, that the district courts in every district should be mutually auxiliary to each other for such purposes and proceedings. This decision comes from a quarter, which entitles it to great respect; and the question being clear as to the right of the assignee to relief on the merits, it may well be held, on the authority of the case referred to, that this court is competent to grant the relief.

The only questions, which remain to be considered, are questions arising upon exceptions filed to the report of the commissioner, to whom a reference was ordered to ascertain and report the amount of the expenses incurred in the prosecution of the suit, in which the judgment in question was recovered, and to state the nature and character of the expenses.

It appears, that after judgment was rendered in the county court, and while the cause was pending in the supreme court, the assignee, becoming in the mean time apprised of its pendency, applied to the

court, by motion, for leave to enter and prosecute the suit for the benefit of the creditors under the bankruptcy. Mr. Linsley, as attorney and counsel for Jones, resisted the motion ; and the court, upon the ground that the suit was not pending at the time of the bankruptcy, but was commenced afterwards, overruled and dismissed the motion. The commissioner has allowed Mr. Linsley for his services as counsel in opposing that motion.; and to this allowance exception is taken.

The order of reference to a commissioner did not proceed upon the ground of a lien, as usually allowed to an attorney by courts of law and equity, but upon the more enlarged ground, that as the assignee comes in and asks the interposition of the equity powers of the court to give him the benefit of the judgment recovered by Jones, he must take it, if he would have it, subject, not only to such charges as were legally taxable and recoverable as costs, but also to all other reasonable charges and expenses incurred in obtaining the judgment. To such charges, the assignee, in the ordinary course, would have been subjected, if he had himself commenced and carried on the suit in his own name; and to that extent, Mr. Linsley, the attorney and counsel in the suit, has an equitable claim on the judgment as against him. But services rendered in opposing the motion of the assignee for leave to enter and prosecute, which was a collateral proceeding, forming no part of the principal suit, but presenting a question between the assignee and Jones only as to the control of the suit, do not come within the principle adopted. Mr. Linsley opposed the motion in behalf of Jones, and with full knowledge of the right of the assignee, of which the motion itself was notice. If the assignee mistook the proper form of enforcing his right, and his motion was not sustainable in point of law, all he could be liable to would be legal taxable costs on the motion. That is all that a party who has a right, but misconceives his remedy, is ever subject to. The assignee has a clear equitable right to the fruits of the judgment, which any court of general equity jurisdiction might enforce ; and services rendered, not in recovering the judgment, nor in any way conducive to that end, but in a collateral proceeding, and in hostility to the right of the assignee, can form no charge on the judgment, in equity, as against him.

The commissioner has farther allowed Mr. Linsley for services as

Moore *v.* Jones et al.

counsel in defending this petition, to which exception is also taken. It is quite obvious, that in allowing for these services the commissioner exceeded his authority. He was confined, by the order of reference, to services performed, and expenses incurred, in the suit in which the judgment was obtained. Mr. Linsley is a party to this petition, and if he is entitled to any remuneration for being brought into court, it must be in the way and in the form of costs. He was made a party, not only because he had a claim on the judgment for services as attorney in obtaining it, but also because he had the control of the execution, and might, unless enjoined, receive and pay over the money to Jones. It is usual to give costs to a trustee, where there is a fund in his hands, notwithstanding the decree is against him,—sometimes only common costs, but generally all necessary actual charges and expenses in addition. If the rule extended beyond actual charges and expenses, a party who is a professional man, and performs the duties of counsel himself, might be tempted to raise questions and protract the suit for the sake of professional profit. The principle applicable to the case of a trustee seems to be applicable to the case of Mr. Linsley; for he is a mere holder of the money, and it is a matter of indifference to him, whether he pays it over to the assignee, or to Jones. If he had employed and paid counsel, there would be no hesitation in allowing him for expenses so paid. If he has incurred no such or other expenditure, it is difficult to see how, according to any well recognized rule of practice, he can be allowed costs otherwise than as between party and party.

Such costs, with the sum he is entitled to on the report of the commissioner, as modified, Mr. Linsley will be allowed to retain out of the money received by him on the judgment; and a decree will be entered, that the balance of the fund in his hands, as reported and thus adjusted, be paid to the assignee.

NOTE. The case of *Hubbell* v. *Gale*, 3 Vt. 266, referred to in the above opinion, was an action brought by a third person on a former statute of this state against usury. Among the observations made by PRENTISS, Ch. J., in delivering the opinion of the court, are the following : "The first section of the statute prohibits the taking of more than six *per cent.* interest, and the taking of more is an offence against the statute. The second section gives to the person paying the usury the liberty, within one year, to sue for and recover it back; and on his

Moore *v*. Jones et al.

neglect, any other person is authorized, within one year thereafter, to sue for and recover the same. As it respects the party paying the usury, the action is like an action on a contract to recover a debt already due, and is clearly not of a penal nature. The party has a right, on common law principles, to recover back the money, and the statute saves the right to him for one year; but if he does not avail himself of his right within that time, then the amount of the usury is given, as a forfeiture, to any one who will sue for the same. The statute is partly remedial, and partly penal;—remedial, as to the right given to the party paying to recover back the money, and penal, as to the right given to any other person to sue for it on his neglect. Where a statute gives an action to a stranger to recover a forfeiture, he is a common informer, and the action a penal action; though it is otherwise, where the statute gives damages, either single or accumulative, to the party agrieved."