# CHITTENDEN COUNTY,

## December Term, 1849.

[Continued from *ante*, p. 141.]

---

### Nichols & Bliss *v.* Hiram Bellows.

The right of a bankrupt to sue for and recover back money paid by him as usury is not such a right of property as vests in the assignee in bankruptcy. Although the statute has given a form of action in assumpsit, by which money so paid may be recovered, yet this remedy, in legal contemplation, is no less a mode of redressing an injury caused by personal wrong and oppression, than if the action sounded wholly in tort.

In such action, brought to recover back money paid by the plaintiff, as usury, to the defendant, upon a note signed by the plaintiff, and by several other persons as sureties for the plaintiff, one of the sureties is a competent witness for the plaintiff, notwithstanding he may have agreed to indemnify another surety against the note.

Although the payment of usury upon a note will, in law, be deemed a part payment of the note, if the note include both the money loaned and the usury, yet if separate securities are given for the usury, whether at the time of negotiating the loan, or afterwards, and the usury, when paid, is applied upon such securities, the debtor is at liberty to treat such a payment as having no connection with the legal demand and bring his action to recover it back.

Indebitatus Assumpsit. Plea, the general issue, and trial by jury, September Term, 1848,—Bennett, J., presiding. The action was brought to recover of the defendant $48,00, alleged to have been paid to him by the plaintiffs in January, 1841, as usury, and also the sum of $48,00, paid for like purpose in January, 1842.

On trial the plaintiffs called as a witness one Griffin, whose testimony tended to prove, that on the twenty third of January, 1840, the plaintiffs were partners, and that the plaintiffs, as principals, and Nathaniel Packard, Danforth Wales and the witness, as sureties, executed a note on that day to the defendant, for $800,00, which was written, in common form, as payable with interest, and which was given for money loaned by the defendant to the plaintiffs; that

the plaintiffs, in consideration of the loan, agreed to pay to the defendants six *per cent.* extra interest for the use of the money; that the extra interest for the first year was included in a separate note, for $48,00, which was signed by the plaintiffs; that in January, 1841, the plaintiff Nichols paid to the defendant the amount of the last mentioned note, and then executed another note to the defendant for $48,00, which was given for the extra interest upon the $800,00 note for the second year,—which second $48,00 note was also signed by the defendant Griffin; and that in January, 1842, the second $48,00 note was also paid by the plaintiffs. This witness also gave evidence tending to prove, that the note for $800,00 had been fully paid, previous to the commencement of this suit; but it was conceded on the trial, that it had not been paid, unless in the manner hereinafter set forth. There was no testimony given upon the trial, tending to prove the usurious payments, except what was given by the witness Griffin.

The defendants offered in evidence a record of the district court of the United States for the district of Vermont,—from which it appeared, that the plaintiff Bliss filed his petition in bankruptcy in said court September 8, 1842, and obtained his certificate of discharge January 15, 1843; and the defendant claimed, that this action could not be sustained in the name of the present plaintiffs, but that it should have been brought in the name of Nichols and of N. B. Haswell, assignee in bankruptcy of Bliss. To this evidence the plaintiffs objected, and it was excluded by the court.

The defendant then called as a witness Nathaniel Packard, one of the signers of the $800,00 note,—from whose testimony it appeared, that this witness had never paid any part of that note, but that in the spring of 1843 the plaintiff Nichols and the witness Griffin had executed to him a bond of indemnity against said note, which bond this witness still held against Griffin. The defendant then requested the court to instruct the jury, that they should disregard the testimony of Griffin, for the reason, that, although the witness had been allowed to testify, yet if, in the progress of the trial, it appeared that he was interested, it was the duty of the court to instruct the jury to disregard the testimony of such witness. But the court charged the jury, that the testimony of Griffin was proper testimony in the case, even although it should appear, after he had given his

testimony in court, that he was interested, and yet that his interest was discovered too late to be taken advantage of by the defendant.

It appeared, that on the twenty third of July, 1840, the plaintiffs paid to the defendant the interest upon the $800,00 note to that date, and the amount was indorsed upon the note, and that on the twenty third of July, 1843, Danforth Wales, one of the sureties upon the note, paid to the defendant $299,31, which was also indorsed upon the note, and that on the eighth day of August, 1843, Wales entered into an agreement with the defendant, for securing said note, which was evidenced by an instrument in these words :—

"Received of Danforth Wales two notes in his favor against 'John A. Hill, both dated February 26, 1840,—one for $318,20, 'payable with interest annually on or before one year from date, on 'which there is indorsed, November 9, 1842, $87,71,—the other 'note for $318,19, payable on or before two years from date, with 'interest annually,—both of said notes secured by mortgage. And 'it was agreed, that one third part of said notes was to be paid in 'the month of May last, one third in the month of May, 1844, and 'one third in the month of May, 1845. Now the said Wales turns 'out the said notes to me, with a mortgage securing the payment of 'said notes, for the purpose of securing the note dated Jan. 23, '1840, for $800,00, payable to said Bellows, or his order, and signed 'by Nichols & Bliss, Almon Griffin, Nathaniel Packard, Danforth 'Wales. Westford, Aug. 8, 1843." (Signed) " HIRAM BELLOWS."

It was also conceded, that the amount due upon the notes against Hill, mentioned in said agreement, had been paid to the defendant previous to the commencement of this suit, and that that amount exceeded the balance then due upon the $800,00 note. It was also *conceded,* that, at the time that amount was paid to the defendant, Wales was indebted to the *defendant* upon other obligations, which were then due, to the amount of $200,00, and which still remain unpaid, and which, with the balance due upon the $800,00 note, exceeded by $150,00 the amount received by the defendant from Hill ; and that there had never been any accounting, between Wales and the defendant, in respect to the money received upon the notes against Hill, nor had Wales directed the application of that money upon the $800,00 note, nor had any part of it been so applied by the defendant,—but that the defendant still held the $800,00 note unsatisfied, except so far as it was satisfied by the indorsement upon it, and by the payment to the defendant of the notes

against Hill, in pursuance of the agreement between Wales and the defendant above set forth.

The defendant requested the court to charge the jury, upon these facts, that the plaintiffs could not recover in this suit ; that the payment to the defendant of the amount due upon the notes against Hill, under such circumstances, did not amount to a payment and extinguishment of the $800,00 note, and could not so operate, until there had been an application of said money upon the $800,00 note; that while the $800,00 note remained unsatisfied, the payment of the said two sums of $48,00 each would be considered as a payment of so much money generally on that note ; and that, even if such application had been made, the suit for the recovery of the said two sums of $48,00 each could not be sustained by the plaintiffs, but should have been brought in the name of Danforth Wales.

But the court charged the jury, that the payment to the defendant of the amount of the notes against Hill, which were held by the defendant as collateral security for the $800,00 note, was in law an actual extinguishment and payment of the $800,00 note, and that, if they found, that the said two sums of $48,00 each were paid by the plaintiffs and received by the defendant as extra interest, the plaintiffs were entitled to a verdict for the amount so paid, with interest from the time of payment.

Verdict for plaintiffs. Exceptions by defendant.

*Platt & Peck* for defendant.

1. The payment of the usury was, in its legal effect, a payment generally upon the principal note. If the money, which the defendant subsequently received upon the Hill notes, was, by law, applied upon the balance remaining after the application of the usury, and the payment of interest July 23, 1840, and the payment by Wales July 23, 1843, and if the total amount thus applied exceeded the note, the excess is recoverable by Wales.

When each of the usurious notes was paid, the $800,00 note was mature, and its payment could have been enforced against the plaintiffs at any time. The payment of the usury was a part of the note transaction ; it was made for the use of the consideration, for which the note was given ;—hence it was made upon the note. It is the same, as if a payment had been made to discharge the interest

legally due upon the note, but by mistake the payment had exceeded the interest. *Ward* v. *Sharp*, 15 Vt. 115. *Smith* v. *Bunley*, Doug. 670. *Dey* v. *Denham*, 2 Johns. Ch. R. 182. The statute, which gives this action, does not apply, when the usury can be applied in payment of the debt, but only when the plaintiff must otherwise suffer loss. The law would not so operate, as to restore to the principal debtors what had already been paid by them, and thus call out so much more from the sureties.

If the facts disclosed by Packard, relative to Griffin's liability to him upon the bond, had been known when the latter was sworn in chief, they would have sufficed to exclude him, if he had then been objected to. The effect of the bond increased the risk and liability of Griffin and Wales.

The record of the discharge of Bliss in bankruptcy should have been admitted. The assignment in bankruptcy was made after the payment by the plaintiffs of the usurious interest. It transferred the legal and equitable right of Bliss in the payment to the assignee, and a recovery can be had for that payment in the names of Nichols and the assignee alone. *Blin* v. *Pierce*, 20 Vt. 25. Owen on Bank. 68, 85, 124. *Smith et al.* v. *Stokes*, 1 East 363. *Thomason* v. *Frere*, 10 East 447. *Hague* v. *Rolleston*, 4 Burr. 2174. *Eckhardt* v. *Wilson*, 8 T. R. 140. *Moult* v. *Massey*, 1 B. & Ad. 637. *Page* v. *Bauer*, 4 B. & Ald. 345. 1 Chit. Pl. 27. Arch. Pl. 58. *Murray* v. *Murray*, 5 Johns. Ch. R. 60. *Van Valkenbergh* v. *Elmendorf*, 13 Johns. 314.

*Smalley & Phelps* for plaintiffs.

The record in bankruptcy was properly rejected. The right to recover back usury is not a debt, and does not pass to the assignee in bankruptcy. It is a personal privilege in the nature of a penalty, and cannot be reached by creditors in any form. *Barker* v. *Esty, Tr.*, 19 Vt. 131.

The court were right in refusing to instruct the jury to disregard the testimony of Griffin. He had signed a bond to indemnify one of the sureties upon the principal note, on which the usury had been computed; but that note had been paid, as the case shows, before the commencement of this suit, and the bond was of course discharged; and even if not paid, a recovery either way in this suit

could have no possible bearing upon the payment of it, or upon the liability or indemnity of the surety.

The court were right in instructing the jury, that the facts proved constituted all the payment of the principal note, that the law required. 1. No payment was necessary. The usury, having been included in separate securities, and paid *eo nomine* at different times, may be recovered back without any payment of the principal note. *Grow* v. *Albee*, 19 Vt. 541. 2. The note had been fully paid in point of fact. The defendant had received assets from the plaintiff, to an amount sufficient to pay it, under a written agreement that the proceeds should apply in payment of this note.

The opinion of the court was delivered by

Royce, Ch. J. Several objections are taken to the right of the plaintiffs to recover.

It is insisted, that the cause of action in favor of the plaintiff Bliss passed to his assignee in bankruptcy, who should have joined with the other plaintiff in bringing this action. To sustain the objection, the defendant relies on the words of the United States' bankrupt act of 1841, which professed to transfer to the assignee all the bankrupt's "property and rights of property, of every name and nature." This sweeping enactment undoubtedly extended to every thing, which would properly go to make up a full inventory of the bankrupt's estate,—all his means consisting of tangible property, and rights of property, which could be expected to be made available for the payment of debts. But the right to sue for torts is not a right of property in any such sense. It is simply a right of redress, which is personal to the party injured, and which he may decline to enforce at his election. And though the statute has given a form of action in assumpsit, by which a party, who has paid usury, may recover it back, yet this remedy, in legal contemplation, is no less a mode of redressing an injury caused by personal wrong and oppression, than if the action sounded wholly in tort. *Barker* v. *Esty*, 19 Vt. 131. We consider, that no right to sue for the usury claimed ever vested in the assignee of Bliss, and that the record of the proceedings in bankruptcy was correctly excluded.

It is also claimed, that the witness, Griffin, was incompetent to testify for the plaintiffs, on the ground of interest. I shall not

inquire, whether the objection to this witness was seasonably taken at the trial. If the note of eight hundred dollars, given for the loan, and which the witness signed as surety, had been fully paid, (as the evidence tended strongly to prove,) he could have had no interest at the time of testifying. And if it had not been paid, he was rather interested to have the usury remain in the defendant's hands, that it might be applied, by equitable offset, or otherwise, in part satisfaction of that note. It is not perceived, how the fact of the witness having agreed to indemnify another surety upon the note could operate to create an interest in this suit in favor of the plaintiffs, whether the note had or had not been paid.

The remaining objection is, that the usury, when received by the defendant, went, by operation of law, in part payment of the note for eight hundred dollars, though such an application was not contemplated by the parties. And that such will be the effect, where the security on which the payment is made includes both the loan and the stipulated usury, is doubtless well settled. That was the case of the first sum of thirty two dollars, mentioned in *Ward v. Sharp*, 15 Vt. 115. So a general payment, upon what the borrower owes the lender, will be applied by the law to a debt legally due, and not in satisfaction of any usurious stipulation. But when separate securities are given for the usury, whether at the time of negotiating the loan, or afterwards, and the usury, when paid, is applied upon such securities, the debtor is at liberty to treat such a payment as having no connection with the legal demand, and bring his action to recover it back. This is settled by the cases of *Grow v. Albee*, 19 Vt. 540, and *Nelson v. Cooley*, 20 Vt. 201, both of which were actions of assumpsit, like the present. At the same time he may, at his election, at least in a court of equity, compel the application of such usurious payments upon the lawful debt of the creditor. *Ward v. Sharp*, above cited, and *Day v. Cummings*, 19 Vt. 496. The plaintiffs are clearly entitled to retain their judgment, and the same is affirmed.