# Robinson *v.* Denny.

*Bill in Equity to Redeem Lands.*

1. *Bankruptcy; when property and rights of bankrupt pass to assignee.* Upon an adjudication in bankruptcy, the appointment of an assignee, and the execution and delivery of an assignment, the property and rights of the bankrupt pass to the assignee, who alone can sue for the recovery of the property, or the enforcement of the rights; and this is so, whether or no the credit, property, or right of property was included in the bankrupt's schedules.

2. *Same; equity of redemption.*—An equity of redemption in lands passes to the assignee of the bankrupt, and he alone can assert it.

3. *Same; surplus in trust for bankrupt; title in assignee until decree rendered.*—Although, after all debts proved against the bankrupt's estate are paid, the assignee holds the surplus in trust for the bankrupt, and the court of bankruptcy, upon proper application, will order its transfer; yet, until such decree is obtained, the title remains in the assignee, and if the surplus consists of rights of action, he alone can maintain suits founded on them.

APPEAL from the Chancery Court of Chambers. Heard before the Hon. N. S. GRAHAM.

Bill was filed by appellants (William C. Robinson and others), against appellees (William S. Denny and others), alleging in substance as follows: In March, 1866, Jesse B. Robinson, the father of appellants, and under whom they claim, during stress of pecuniary embarrassments, and after he had "pitched" a large crop, was forced to borrow money to aid him to cultivate and save the same; that he applied to one Staples (under whom appellees claim), for a loan of money; that before Staples would loan the money to Robinson, he demanded him to secure nineteen hundred and sixty-seven dollars due from Robinson to Staples in Confederate money, which money was estimated at its face value; that this Confederate money, with enough cotton, at thirty-one

cents a pound, to make $4,066.30, was the consideration upon which a mortgage was executed by said Jesse B. Robinson, on the eighth of March, 1866 ; that after said mortgage said Robinson, on the 21st of November, 1866, executed a deed to said lands to said Staples, under the following circumstances and conditions : That at the execution of the deed, Robinson was laboring under and was crushed by stringent pecuniary embarrassments and misfortunes ; that he had invested all of his means in the cultivation of a crop that resulted in complete failure ; that he was suffering from the effects of a prostrate spell of sickness, and was in a low, gloomy, and impaired condition of mind, physically depleted and wrecked, and from such mental and physical condition, and misfortune, was unable to transact his business with discretion, and protect himself from imposition and fraud ; that Staples protested the strongest friendship and sympathy for Robinson and agreed with Robinson if he would execute to him the deed, he would let Robinson redeem the lands and remain in possession thereof until the rents and profits would pay Staples' debt ; that Robinson, confiding in the friendship and promises of Staples, and placing himself entirely in the power of Staples, executed the aforesaid deed ; that at the time said deed was executed, Staples was the mortgagee of Robinson, and there was a power of sale in said mortgage, and the law-day of said mortgage had not arrived ; that without a foreclosure of said mortgage, or the execution of said power of sale, and upon an inadequate consideration, he procures said deed ; that after procuring such deed he ceased to sympathise with Robinson, and ousted him of the possession of the land, and claims that such deed carried the absolute title to him freed from the right of redemption and equitable rights of Robinson.  The bill also avers that sometime in 1868, the said Jesse B. Robinson went into bankruptcy, and obtained a final discharge on the 14th of May, 1870; that there was but one debt proven against the estate of said Robinson, and that now there are no debts, all having been paid or legally satisfied ; that the property in controversy was never under the control of the bankrupt law, or in the possession of the assignee ; that such assignee was discharged more than two years prior to the filing of the bill, and no successor was appointed ; that respondents profess to hold title to said lands under said Staples, or some one holding under him, and that the said purchasers and respondents were and are not *bona-fide* purchasers, without notice, and they well knew of all the interest and rights of the said Jesse B.

[Robinson v. Denny.]

Robinson in and to the same, at the time of the purchase. The bill prays for general relief, and that the deed signed by said Robinson on the 21st of November, 1866, to said Thomas Staples, be declared null and void, and that the same be cancelled and delivered up to complainants, or, if it appear that said deed was the voluntary act of said Robinson, then let it be declared to be a mere security for the payment of the lawful money advanced thereon; that an account be taken, &c.

Respondents, among other grounds of demurrer assigned the following: *First*, there is no equity in the bill; *third*, the complainants do not propose to do equity; *seventh*, the bill is multifarious in seeking to connect Confederate money with the deed; *ninth*, the allegations are not sufficient to declare the deed a mortgage-deed.

The cause being submitted on demurrer, the chancellor overruled the demurrers, and required respondents to answer further.

The respondents answered, denying *in toto* the allegations of the bill, except the first paragraph, which they neither admit nor deny, and the ninth paragraph (alleging the appointment and final settlement, &c., of the administration of said Staples), which they admit.

Upon final hearing, the chancellor decreed that complainants were not entitled to the relief prayed, and dismissed their bill.

The decree is now assigned as error.

W. H. DENSON, for appellants.—1. All transactions between mortgagor and mortgagee, whereby the equity of redemptions is defeated, barred, or clogged, equity considers oppressive and obnoxious to good conscience and fair dealing, and will relieve against the same. " Once a mortgage always a mortgage."—Adams' Equity, 256, 257, 258 and notes; *Clark v. Henry,* 2 Cowen, 324; *Holridge v. Gillespie,* 2 Johns. Ch. 29, 32, 33; *Gunn v. Brantley,* 21 Ala. 633, 643; *Cunningham v. Rogers,* 14 Ala. 147, 149; *Locke's Executor v. Palmer,* 26 Ala. 324; *Russell v. Southard,* 12 How. (U. S.) 139; 2 Story's Eq. § 1019.

2. Appellees contend that Jesse B. Robinson, having gone into bankruptcy, appellants can not maintain this suit. All the proceedings in the bankrupt court were regular; the bankrupt was discharged more than two years before the filing of this bill. The effect of bankruptcy passes the title of all the bankrupt's property to his assignee, subject to the

[Robinson v. Denny.]

trusts and limitations of the bankrupt law. This trust is to pay the creditors. When they are paid the bankrupt is entitled to the surplus.—*In re Hoyt*, 3 Bankrupt Rep. 55; *Charman v. Charman*, 14 Ves. Jr. 580–584.

3. After the payment of the debts and the discharge of the assignee for more than two years, all rights of action for or against him are barred, and no suit can be maintained for any purpose against him. The bankrupt or his heirs have the right in such cases to sue for the property belonging to the bankrupt before bankruptcy.—Tyler on Ejectment, 174; *Ross v. McJunkin*, 14 S. & R. (Penn.) 364–369; *Power v. Hollman*, 2 Watts (Penn.) 218, 220, 221; *Preston v. Wilson*, 5 Hare, 184–192; 1 Daniel's Chancery, 60, note 7—explicit on this case.

4. If Staples had the right to foreclose, the inseparable right and incident to the mortgage still remained—that of the right of redemption. Staple not being estopped, Robinson nor his heirs are estopped. A party not bound by a judgment or proceeding in court can not claim that another is estopped by it.—1 Brick. Dig. p. 802, § 93.

W. H. BARNES, *contra.*—1. We maintain, in the first instance, that the proof is decidedly in favor of the capacity of Jesse B. Robinson at the date of the deed to Staples. The witnesses examined by the complainant even, show his capacity.

2. But over all this the evidence shows that the defendants are innocent purchasers without notice. The defendant, Thomas Staples, had a deed from Jesse B. Robinson, as shown by even the bill of complaint, acknowledging the full payment of the purchase-money, and the respondents bought from him, while in possession, and took a deed from him, and that they severally sold to other purchasers; they being in possession, and claiming to have a legal title, made a deed to the defendants, and the defendants paid down the purchase-money. Copies of the several deeds are in the record, and the agreement as to the proof between the sales and the proof of the witnesses show the money was paid without any notice. *Wells v. Morrow*, 38 Ala. 125; *Moore v. Clay*, 7 Ala. 742; *Ledbetter v. Walker*, 31 Ala. 175; *Buns v. Taylor*, 23 Ala. 255, and the case decided at the present term of this court of *Dixon v. Brown*.

3. But, Robinson, after making the deed to Thomas Staples, went into bankruptcy, made his schedule, and did not include these lands or say anything about them. When

he went into bankruptcy, whatever right or interest said Jesse B. had, if any he did have, vested immediately in his assignee. It is shown that he had a large amount of creditors, and that they have not been paid, or any particular distribution of his bankrupt estate in the court of bankruptcy. Until that was done the heirs most certainly did not have any claim to the lands and could not maintain this bill.

BRICKELL, C. J.—1. The property, and rights of property of Jesse B. Robinson, the ancestor of the complainants, on his adjudication as a bankrupt, the appointment of an assignee, and the execution and delivery of an assignment, vested in the assignee exclusively. By operation of law, the bankrupt was disabled from suing subsequently, for the recovery of such property, or the enforcement of such rights—the right of suit followed the property, or rights of property, and resided in the assignee. It is not material whether the property, or right of property, or credit, which is the subject-matter of suit, was embraced, or not, in the schedules of the bankrupt. The schedules do not pass the title or right to the assignee, but the adjudication, and the express terms of the bankrupt law.—*Jewett v. Preston*, 27 Me. 400; *Holbrook v. Coney*, 25 Ill. 543.

2. If all the disputed facts of the case were resolved in favor of the complainants, the equity of redemption remaining in their ancestor, at the time of his bankruptcy, passed to his assignee, and he alone could subsequently assert it. 1 Dan. Ch. Pr. 58–62.

3. It is doubtless true, that if after payment of the debts, which may be proved against the estate of a bankrupt, a surplus remains in the hands of the assignee, he holds it in trust for the bankrupt; and on a proper application to the court of bankruptcy, payment, or a transfer of it, will be decreed.—*Charman v. Charman*, 14 Vesey, 580; *In re Hoyt*, 3 Nat. Bank Reg. 55. Until the decree is obtained, the title remains in the assignee, and if the surplus consists of rights of action, he alone can maintain suits founded on them. *Spragg v. Binkee*, 5 Vesey, 583; *Benfield v. Simmons*, 9 Vesey, 77. No other court can properly inquire and determine whether the debts of the bankrupt are satisfied, and what are his rights and equities, or the rights and equities of the assignee, or of creditors. The complainants were without right or title to relief, and the bill was properly dismissed.

Decree affirmed.