## CHARLES LAFOUNTAIN *v.* BURLINGTON SAVINGS BANK.

*Usury. Bankruptcy. Rights of Debtor over claims abandoned by Assignee. Debtor may sue in his own name.*

1  Uncollected usury does not pass to the assignee in bankruptcy, and it may be collected by the debtor after his discharge in a suit in his own name.

2.  A debtor, after his discharge, may sustain an action in his own name to recover money paid under a mutual mistake, the assignee having settled the bankrupt estate without attempting to enforce the claim, and the Statute of Limitations having run so that it would be a bar to a second suit in behalf of the creditors.

3.  The creditors could have come into this suit, and availed themselves of this claim; but neglecting to do so, the suit pending for a long time, with all the facts spread upon the record, the court refused to delay judgment.

ASSUMPSIT in common counts. Plea, general issue, with an agreed statement of facts. Trial by court, September Term, 1880, Chittenden County, PIERPOINT, Ch. J., presiding. Judgment for the plaintiff. The action was to recover for usury, and

for money paid by a mutual mistake to the defendant. Payments of the usury, and by mistake were admitted. Afterwards the plaintiff was adjudged a bankrupt by the U. S. District Court, and an assignment of all his estate was made to the assignee in conformity with the provisions of the U. S. Bankrupt Act.

Thereupon, the assignee aforesaid undertook and proceeded with the administration of said trust; but made no claim, nor attempted to collect of the defendant any of the aforesaid over-payments of interest; and never knew of said two payments so made as aforesaid by mutual mistake; and neither party discovered the same until after the bringing of this suit. The assignee settled the estate, and, after paying some 40 cents on the dollar to the creditors, was discharged. The plaintiff received his discharge from the court.

*Wm. G. Shaw*, for the defendant.

The language of the U. S. Bankrupt Act is broad enough to include the plaintiff's claims to recover usurious interest; and both under the recent bankrupt law and other bankrupt and insolvent laws of a similar purport, such claims have been held to pass to the assignee in bankruptcy.

All the debtor's "rights of action for property or estate" pass to the assignee. U. S. R. S. ss. 5046, 5047; *Moore* v. *Jones*, 23 Vt. 739; *Wheelock* v. *Lee*, 64 N. Y. 242; *Gray* v. *Bennett*, 3 Met. 522; *Cutler* v. *Bubier*, 4 Gray, 588; *Taplin* v. *Wentworth*, 99 Mass. 63; *Wilson, Assignee*, v. *Nat. Bank*, 3 Fed. Rep. 391; 1 Chit. Pl. 71; *Tiffany* v. *Boatman's Saving Inst'n.*, 18 Wall. 375; 1 Dill. 141; 18 B. R. 87; 95 Ill. 11; 125 Mass. 468. *Nichols* v. *Bellows*, 22 Vt., 581, is the only case which I have found, that holds that usury does not pass to the assignee; and, it is submitted, that this is not good law. The action to recover usury is remedial, not penal: *Wheatly* v. *Waldo*, 36 Vt. 273; it survives: *Roberts* v. *Burton's Est.* 27 Vt. 396; an offset may be pleaded to it: *Ewing* v. *Griswold*, 33 Vt. 400. Bankrupt laws are construed liberally in favor of assignees. *Gray* v. *Bennett, supra*; *In re Gallagher*, 19 B.

R. 224. The claim for money paid through mistake passed to the assignee, and can be recovered only in his name. *Minot* v. *Tappan*, 122 Mass. 537; S. C. 127 Mass. 333; *Kennear* v. *Tarrant*, 15 East, 623; *Bickham* v. *Drake*,, 2 H. L. Cas. 579; *Morgan* v. *Stible*, L. R. 7 Q. B. 611; *In re Young*, 12 Weekly Rep. 537; *Griswold* v. *McMillan*, 11 Ill. 590; 9 S. & R. 434; *Hall* v. *McPherson*, 3 Bland, Ch. (Md.) 537; 48 Cal. 201; 95 Ill. 11; 97 U. S. 397; *Robinson* v. *Kenney*, 57 Ala. 492; *Cook* v. *Lansing*, 3 McLean, 571; *Herndon* v. *Howard*, 9 Wall. 664; *Knox* v. *Bank*, 12 Wall. 379; *Parks* v. *Terrill*, 3 Allen, 17; *Nash* v. *Nash*, 12 Allen, 345; *Gay* v. *Kingsley*, 11 Allen, 345. Payment to the bankrupt is no defence to a suit by the assignee. *Butler* v. *Mullen*, 100 Mass. 453; *Stevens* v. *Savings Bank*, 101 Mass. 109; 1 Chit. Pl. 25; 1 Am. Law Rev. 620.

*W. L. Burnap* and *E. R. Hard*, for the plaintiff.

The right to recover the usury did not pass to the assignee. Under our statute it is a personal right. *Nichols* v. *Bellows*, 22 Vt, 581. The claim for payment of usury is in the nature of a penalty. *Churchill* v. *Cole*, 32 Vt. 92; *Austin* v. *Chittenden*, 33 Vt. 553. *Nichols* v. *Bellows* was decided after *Morse* v. *Jones*, 23 Vt. 739, and must be taken as overruling that case. The former case has been approved in *Churchill* v. *Cole*, *supra*; *Low* v. *Pritchard*, 36 Vt. 191; *Ewing* v. *Griswold*, 43 Vt. 402; *Street* v. *Waugh*, 48 Vt. 301. This doctrine has received the sanction of the Federal Courts. *Brombey, Assignee,* v. *Smith*, 5 B. R. 153; *Wright* v. *Nat. Bank*, 18 B. R. 87; *Wheelock* v. *Lee*, 10 B. R. 363. The debtor s title to his property, right of possession, and right of remedy, are good against all the world save his assignee. Bump, 493; *Colie* v. *Jamison*, 13 B. R. 5; *Dewey* v. *Moyer*, 16 B. R. 9; *Stevens* v. *Earles*, 25 Mich. 40; *Steele* v. *Town*, 28 Vt. 771; 23 Me. 196.

The opinion of the court was delivered by

Ross, J. The exceptions, on the facts agreed upon by the parties, present two questions for consideration.

Lafountain *v.* Savings Bank.

I. Did the uncollected usury paid by the plaintiff, to the defendant before the adjudication of bankruptcy, pass, under the late general bankruptcy law to the assignee of the plaintiff? The solution of this question depends mainly upon the wording of the statute of Vermont in regard to usury, and the decisions of the court construing and interpreting that statute. The language of the bankrupt act is broad and comprehensive; and probably the language, "all his rights of action for property or estate, real or personal, and for any cause of action which he had against any person arising from contract, or from the unlawful taking or detention or injury to the property of the bankrupt," is broad and comprehensive enough to include usury as it exists under most of the State laws. Many decisions, both by State and United States courts, cited by the defendant's counsel, have adjudged that usury under the statutes brought under consideration passed to the assignee, and that he alone had the right to recover it for the benefit of the estate of the bankrupt. In some of the cases,— the statute did not give the right to recover the usury paid to any one in terms. This is the case under the national banking act. In other cases the statute gave the right to recover to the person paying the usury, or to his legal representatives. These decisions furnish but little aid in determining whether usury under our statute passes to the assignee in bankruptcy. The language of our statute confines the right to recover back usury to the person paying the same. The decisions have never extended this right beyond such person. It was early held, that it could not be attached by trustee process. *Baker* v. *Esty*, 19 Vt. 131. As this process is the only one by which a creditor can avail himself of uncollected usury, this decision places it beyond the reach of the creditors of the person paying it. If the creditor cannot, while the person paying usury is solvent, avail himself of it in satisfaction of his debt, it is difficult to comprehend how when he becomes insolvent, his assignee, can avail himself of it for the benefit of the creditors of the bankrupt. In this early leading case usury is held, not to be a debt or credit of the person who has paid it, intrusted or deposited in the hands

or possession of the person receiving it, but rather a personal statutory right given to the person paying it to redress a wrong personal to himself, and to punish the person receiving it, for the commission of the wrong, as a part of the police regulations of the State; in legal essence a tort, as for money extorted by duress, in form of remedy *ex contractu*—assumpsit for money had and received, or goods sold and delivered. Whether he will enforce the remedy, redress the wrong, and recover back the money paid as usury, is at the option and election of the person against whom the wrong has been committed, the person paying the usury. *Low* v. *Prichard*, 36 Vt. 191. The statute against usury is for the protection of the borrower only. *Austin* v. *Chittenden*, 33 Vt. 533. Money paid as usury, *eo nomine*, that is, when it is not included in the security, nor paid as a part of the debt, a surety cannot avail himself of in reduction of the debt. *Ward* v. *Whitney*, 32 Vt. 89; *Churchill* v. *Cole*, 32 Vt. 93. For recent cases holding that the right to recover usury is strictly personal, and confined to the person paying the same. *See Cady* v. *Goodnow*, 49 Vt. 400; *Reed* v. *Eastman*, 50 Vt. 67; *Lamoille County National Bank* v. *Bingham*, 50 Vt. 105; *Spaulding* v. *Davis*, 51 Vt. 77; *Richardson* v. *Baker*, 52 Vt. 617. There is an unbroken line of decisions of this court, in whatever light and form the question has been presented, holding that the right to recover back usury is strictly personal, confined to the payer.

The language of the national bankrupt law of 1841 in regard to what property of the bankrupt passed to the assignee was quite as broad and comprehensive, as that of the recent bankrupt law. In its language "all property and rights of property of every name and nature whether real, personal or mixed" of the bankrupt passed to the assignee. Under this act Judge PRENTISS, as U. S. District Judge, held that uncollected usury, under the statute of this State, passed to the assignee of the bankrupt. *Moore* v. *Jones*, 23 Vt. 739. This decision was rendered in 1848. The year following the same question came before this court in *Nichols* v. *Bellows*, 22 Vt. 581, and on full consider-

ation it was held that it did not pass to the assignee. This latter decision has been recognized, and approved, although the question was not then before the court, in *Churchill* v. *Cole*, 32 Vt. 93; *Low* v. *Prichard*, 36 Vt. 191; *Ewing* v. *Griswold*, 43 Vt. 400; *Streit* v. *Waugh*, 48 Vt. 301.

The opinion in *Nichols* v. *Bellows* was delivered by the then Chief Justice Royce, who, with his usual clearness, and force, in speaking of the language of the bankrupt act of 1841 above quoted, and of usury as existing under our statute characterizes them in the following language :

" This sweeping enactment undoubtedly extended to everything which would go to make up a full inventory of the bankrupt's estate—all his means consisting of tangible property and rights of property, which could be expected to be made available for the payment of debts. But the right to sue for torts is not a right of property in any such sense. It is simply a right of redress which is personal to the party injured, and which he may decline to enforce at his election ; and though the statute has given a form of action in assumpsit by which a party who has paid usury may recover it back, yet this remedy in legal contemplation, is no less a mode of redressing an injury caused by personal wrong and oppression, than if the action sounded wholly in tort."

The construction thus placed upon the statute in regard to usury by the highest court of the State, and adhered to for so many years, is not only binding upon this court and the citizens of the State, but upon the Federal Courts. The Federal Courts have by repeated decisions acknowledged the binding force and effect of the decisions of the highest State court in construing the statutes of its own State when such decisions had been uniformly the same way. The only decisions of this court which in tendency and holding, are claimed not to be uniform with the cases already cited are *Roberts* v. *Burton*, 27 Vt. 396, in which it is held that a claim for usury survives against the estate of the party recovering it, and *Ewing* v. *Griswold*, 43 Vt. 400, in which it is held that usury paid may be pleaded in set-off to an

22

action on contract. The latter decision can well be placed upon the ground that its allowance would produce no incongruity in pleading, the remedy prescribed for the recovery back of usury being assumpsit or contractwise, though for the redress of a tort, in essence. The former decision is placed upon the common ground that the receipt of the usury has increased the assets of the estate, and so survives the death of the intestate. Neither decision gives a character to usury different from that stated in *Nichols* v. *Bellows*, *supra*. Whatever may have been decided by other courts in regard to usury under other statutes, passing to the assignee under the late bankrupt law, we adhere to the doctrine announced in *Nichols* v. *Bellows*, *supra*, that right to recover back usury under the provisions of the statute is but a right to redress a wrong personal to the party paying it, to be exercised, or foregone, at his option alone, and did not pass to the assignee under the provisions of the late national bankrupt law. It is not a right of action, arising " from the unlawful taking, detention, or injury to the *property* of the bankrupt," but a right to redress a *personal* wrong, which the bankrupt alone can exercise. On these views the plaintiff is entitled to recover in his own name the amount which the parties have agreed he paid the defendant, as interest in excess of six per cent.

II. The other question presented, is, can the plaintiff, on the facts and circumstances detailed, recover for the money which he paid to the defendant by mutual mistake prior to the time he was adjudged a bankrupt? This is a claim for money or property, the right, title and estate to which, by the adjudication in bankruptcy, vested in and passed to the assignee. Immediately upon the payment of the money by mutual mistake, the law implied a promise from the defendant to repay it to the plaintiff. The right to recover this claim therefore accrued to the plaintiff. The question is, is the plaintiff on the facts and circumstances of this case barred from the exercise of this right? The defendant contends that he is; that inasmuch as the " title and estate " to this claim by the adjudication in bankruptcy passed to the assignee, he alone, until he has parted with the claim, can exer-

cise the right to recover back the money. The industry of the defendant's counsel has produced a large number of cases, both English and American, in which it has been held that the assignee was the proper, and the only proper, party, to recover such a claim. In nearly all the cases cited the assignee was in the active exercise of the functions of his office. In some, the bankrupt had commenced a suit on the ground that the claim did not pass to the assignee, and the question was, who was the proper party to prosecute the suit? to whom did the claim belong? A careful examination of all the cases cited by the defendant's counsel on this point, with certain exceptions hereinafter noticed, shows simply this and nothing more, that, if the claim in contention passed to the assignee, and the defendant plead the adjudication in bankruptcy, the appointment of the assignee, and that the claim passed to him, standing on that plea, the defendant was entitled to judgment. The defendant's counsel contends that after the adjudication of bankruptcy, such claims must be prosecuted in the name of the assignee. It is evident, however, that the defendant's implied promise in this case, and wherever the action is upon a contract and an actual promise, such promise is to the bankrupt. On general principles it would not seem that the defendant should be allowed to object to such promise or contract being enforced in the name of the person to whom he actually or impliedly made it, provided he could be protected against a re-enforcement of it. In *Cook et al.* v. *Lansing*, 3 McLean, 571, cited by defendant's counsel, it is said, "but all suits commenced after the appointment of the assignee, should be brought in his name, or at least prosecuted for the benefit of the creditors whom he represents." It is the right of the assignee to have the avails of the claim to distribute among the creditors of the bankrupt. If the assignee elects to collect it in the name of the bankrupt, what legal objection can the defendant raise? His legal obligation is to pay it to the bankrupt in the first instance, but the bankrupt law intervenes, and declares that the title and estate therein shall vest in the assignee for the benefit of his creditors in the first instance, and the sur-

plus, if any, for the benefit of the bankrupt. If A holds a non-negotiable claim against B, and sells it to C, and C notifies B of such purchase, by such sale all the title and estate in such claim passes to C, and B thereafter can legally discharge it, only by payment to C. C could not, as the assignee in bankruptcy can, sue the claim in his own name, but by the sale took the right to enforce it in the name of A. He also conferred upon B the right and legal duty to pay it to C, and he could insist that A should not enforce it in his own right. Because the title and estate in the claim in contention passed to the assignee, and by force of the bankrupt law the assignee was empowered to bring a suit upon it in his own name, it does not follow that the defendant was thereby clothed with the right to object to its enforcement in the name of the plaintiff, except that it should be so enforced that it could not again be enforced against him in the name of the assignee. Suppose the claim is burdened with an onerous condition, so that it is doubtful if anything will be gained to the estate by its enforcement, or that it is of a doubtful character, and the assignee refuses to accept the burden or to incur the expense of the litigation, and for that reason renounces his right to the claim, is it in the power of the defendant to say that his duty or contract obligations to the bankrupt are thereby discharged, and that the bankrupt is barred from calling on him in that behalf? In the well considered case of *Amory* v. *Lawrence*, 3 Clif. 527, Judge CLIFFORD speaking on this subject says the bankrupt's "title, in case of onerous property where the assignee elects not to take it into possession, is good against all the world, except the assignee or some one to whom he conveyed the property." *Smith* v. *Gardon*, 6 Law Rep. 317. "All property and rights of property belonging to the bankrupt, unquestionably pass by force of the decree in bankruptcy to the assignee by operation of law, and become vested in him as soon as he is appointed. But though the legal title passes to the assignee he is not bound, said Judge Ware, to take possession of all property. Leasehold estates pass to the assignee under the English bankrupt laws; but the assignee is not bound to

take the lease and charge the estate with the payment of the rent, as the rent may be greater than the value of the lease, and thus the estate may be burdened instead of being benefitted; and in such a case the claim may be abandoned by the assignee. He is not bound in such a case to take the property; it remains in the bankrupt; and no one certainly, except the assignee, has a right to dispute his possession; *Copeland* v. *Stephens*, 1 Barn. & Ald. 603; *Fowler* v. *Dawn*, 2 Bos. & Pul., 44."

\*        \*        \*        \*        \*        \*        \*

"Robson says it has long been a recognized principle of the bankrupt law that the assignees of a bankrupt are not bound to take property of an onerous or unprofitable character, or property which will be a burden instead of a benefit. They are on that subject regarded as being in a very different position from that of the executors of a deceased testator, as the former take the property by operation of law, while the latter claim title through their testator, and are bound to perform his obligations to the extent of his assets. Robson's Bankruptcy, 822. Where the assignee elects not to take the rights of the bankrupt, and charge the estate with the burden of uncertain litigation, the right, whatever it is, survives in the bankrupt, and some of the authorities hold that it may be pursued by any creditor not a party to the proceedings in bankruptcy. *Smith* v. *Gordon*, 6 Law Rep. 317. Persons acting as assignees in such a case are required to elect within a reasonable time; and the rule is that if they refuse to elect when required to do so it is deemed an election to reject the estate. *Lawrence* v. *Knowles*, 5 Bing. N. C. 399; *Carter* v. *Warne*, 4 C. & P. 191; *Graham* v. *Van Diemen's Land Co.*, 11 Exch 101; *Ex parte Blandy*, 1 Dea. 321; *Tuck* v. *Tysan*, 6 Bing. 94." The authorities cited fully sustain the doctrine announced by the learned judge. This doctrine has been followed and applied in *Towle* v. *Rowe*, admr., 58 N. H. 394, and *Ramsey* v. *Fellows*, 58 N. H. 607. It shows that both under the English and American bankrupt laws the right to enforce a contract or legal duty in the name of the bankrupt is not taken away by the adjudication in bankruptcy

and the appointment of an assignee; that this still exists so far as the defendant is concerned or interested by contract or legal duty and obligation, and that the defendant is only concerned, and has the right to be protected against the danger of being subjected to two suits and a double payment of the claim transferred by operation of the bankrupt law to the assignee. When that danger has passed, his right to object to a suit in the name of bankrupt is gone. This is consonant with the decision of this court in *Udall* v. *School District*, 48 Vt. 588, in which it is held that on the sale of a non-negotiable claim by the assignee to the bankrupt, the bankrupt could maintain a suit thereon in his own name. As the bankrupt law did not make a non-negotiable claim negotiable even in the hands of the assignee, but simply empowered him to sue it in his own name, when the assignee's right to the avails of the claim became extinguished as between him and the bankrupt, the right of the defendant to object to a suit in the name and for the benefit of the bankrupt also ceased. None of the cases cited by the defendant's counsel contravene the doctrine announced by Judge Clifford, *supra;* but some of them recognize it. In *Gay* v. *Kingsley*, 11 Allen, 345, CHAPMAN, Judge, says: "He (the bankrupt) might hold it (the note) as his own if the assignee, with knowledge of its existence, declined to claim it." In *Smith* v. *Chandler*, admr. 3 Gray, 392, it is in substance conceded, that a suit could be begun and prosecuted in the name of the bankrupt, "with the consent and for the benefit of the assignee," but that the case did not show such assent. The cases strongly relied upon by the defendant, do not discuss nor consider what the right of the bankrupt would be, if it were shown that the assignee had waived his right to prosecute the claim, or, that the defendant had in any other way been placed in circumstances so that the danger of a second payment of the claim being enforced by the assignee was passed. In *Nash* v. *Nash*, 12 Allen, 345, the interest of the bankrupt in the demanded premises was included in his schedule of property, filed in the proceedings in bankruptcy, and it was not shown whether the assignee realized anything from it, or in any way

availed himself of it. It was held the bankrupt could not maintain the action. In *Park and wife* v. *Tirrell*, 3 Allen, 15, it is held that the right of the plaintiffs became vested in the assignee and nothing was shown by which it had been conveyed to any other person, and that if the right became barred by the Statute of Limitations while vested in the assignee, from prosecution by the assignee, it thereby became barred from subsequent prosecution by the plaintiffs. *Griswold* v. *McMillan*, 11 Ill. 590, decides that the bankruptcy of the plaintiff is a good defence to an action in his name when he produced the note on which the action was founded, and showed no other facts. *Robinson* v. *Denny*, 57 Ala. 492, so far as regards the question under consideration, holds that it is for the bankrupt court to determine the surplus which the assignee holds, if any, in trust for the bankrupt, and until such decree the title remains in the assignee, and if the surplus consists of rights of action, he alone can maintain suits founded on them. None of these cases, urged especially by the defendant's counsel, consider the question discussed by Judge CLIFFORD; nor do they decide anything in conflict therewith. The remaining question is do the facts of this case bring it within the principle which allows the bankrupt to maintain the suit for a recovery for this money paid by mutual mistake? The fact that the assignee has settled his account and been discharged by the bankrupt court does not remove the danger of a second second payment of the claim from the defendant, as a new assignee doubtless could be appointed at the instance of the creditors who have not been paid in full; nor does the failure of the assignee to prosecute the claim while in office; for neither he, nor the bankrupt, then knew of its existence. But it further appears, and is not disputed by the defendant, that the claim has now become barred by the Statute of Limitations, if an assignee should now be appointed to prosecute the same. This suit however was commenced in season to save the statute bar as to the plaintiff. As by the lapse of time the defendant has now a full defence against a suit in favor of any assignee whom the creditors may have appointed, upon principle and authority the right to

maintain the suit in the name of the bankrupt, which never was lost, exists and may be exercised by the bankrupt in his own favor. If any sure remedy remains to the creditors of the plaintiff to avail themselves of this claim, it is by coming into this suit, and on equitable principles in regard to sharing in the expense of its prosecution, by being allowed to take the avails of this claim. This doubtless could be done. But the suit has now been pending a long time, with all the facts in regard to this claim spread upon the record, and no move, been made by the creditors for the appointment of another assignee, nor to be allowed to come into this suit and take the avails of this claim. Their failure to act is a practical renunciation of the claim or any right to it. The defendant having ample means of protecting itself against a repayment of the claim, the neglect and nonaction of the plaintiffs' creditors, under the circumstances of this case, do not call upon the court to delay judgment in favor of the plaintiff, that they may be notified, and formally renounce all right to the claim, as was done in cases reported in the 58 N. H.

Judgment affirmed.